UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA                          :
                                                  :
                           Plaintiff,             :
                                                  :
       -against-                                  :       12 Civ. 4034 (HB)
                                                  :
ALL RIGHT, TITLE AND INTEREST IN THE              :       OPINION & ORDER
REAL PROPERTY AND APPURTENANCES                   :
THERETO KNOWN AS 35-37 EAST                       :
BROADWAY, NEW YORK, NEW YORK                      :
10002 LISTED AS BLOCK 280, LOT 42 IN              :
THE OFFICE OF THE COUNTY CLERK                    :
AND REGISTER OF NEW YORK COUNTY,                  :
NEW YORK,                                         :
                                                  :
                           Defendant-*in-rem*.    :
------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**[1]

      The United States brings this civil forfeiture action against the above-captioned real property (the "Property"). The remaining claimants to the Property are Won & Har Realty Corporation, TYT East Corporation, and David Gao. Won & Har is the Property's current owner. TYT was the tenant in possession during the relevant period. And David Gao is a TYT shareholder. This opinion and order resolves the parties' four competing dispositive motions, including those pertaining to Gao's securities fraud claims against Ji Xiong Ni and Fen Zheng, two TYT officers. In addition, this opinion resolves TYT's counsel's motion to withdraw. For the reasons that follow, the government's motion for summary judgment is GRANTED and the Property is subject to forfeiture. Summary judgment is also GRANTED as to TYT's and Gao's lack of standing. Won & Har's motion for summary judgment is DENIED as to both its innocent ownership and the disproportionality of forfeiture under the Eighth Amendment. Accordingly, TYT's and Gao's claims to the Property are dismissed. Further, Ji Xiong Ni's and Fen Zheng's motion to dismiss the fraud claims against them is GRANTED. Finally, the motion to withdraw by TYT's counsel is GRANTED.

---

[1] Jonathan Myers, a rising second-year student at Brooklyn Law School and a Summer 2013 intern in my Chambers, provided substantial assistance in researching and drafting this opinion.

# BACKGROUND

The New York Police Department ("NYPD") first executed a search warrant at the Property on March 15, 2011 as part of an investigation into illegal gambling on the premises. A second search warrant was executed on July 19, 2011. And a third search warrant was executed on May 21, 2012, this time with both NYPD and federal Homeland Security agents participating. On all three occasions, law enforcement found evidence of a large-scale gambling operation— including mah jong, pai gow, 13-card poker, and slot machines. Law enforcement officers seized tens of thousands of dollars during all three instances and arrested several individuals. Based on video surveillance, much of this gambling was conducted openly. Indeed, by March 29, 2012, a large sign had been erected on the front of the Property stating "LUCKY U 777" with dollar signs scattered across the sign.

After the NYPD executed the second search warrant, Won & Har's president, David Leong, sought information from the NYPD regarding the ongoing gambling. And on August 1, 2011, Leong directed Won & Har's attorney to issue a notice to TYT demanding that it cure the illegal gambling taking place in four different units. Later that month, TYT wrote to Won & Har that tenants in those units had surrendered their leases.

Then on October 4, 2011, the City of New York filed a public nuisance action against Won & Har and the Property's lessees based on the ongoing illegal gambling. Won & Har eventually settled that action on November 22, 2011. As part of that settlement, Won & Har agreed to a permanent injunction prohibiting the company from permitting the Property to be used for illegal gambling. TYT also agreed to similar settlement with the City. But in addition to an injunction, TYT also consented to "unannounced warrantless inspections of the entire subject premises" by the NYPD. (Fong Aff. Ex. E.) In light of these public nuisance charges and permanent injunction, as well as the three raids conducted between March 2011 and May 2012 and the evidence of open gambling, Won & Har was required to do something about the problem.

Yet after receiving the surrender notices from TYT and settling with the City, Won & Har took no further action in relation to illegal gambling at the Property until after the government's third raid. And after that raid, Won & Har moved to evict TYT on May 23, 2012. Judgment was entered in favor of Won & Har on August 31, 2012 and a warrant of eviction was issued against TYT on February 14, 2013. TYT later vacated the premises.

## DISCUSSION

### A. Forfeiture of the Property

I examine first the parties' competing motions for summary judgment as to the forfeiture of the Property. It is well-settled that "[s]ummary judgment is appropriate only if the evidence demonstrates that 'there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.'" *United States v. Portrait of Wally*, 663 F. Supp. 2d 232, 250 (S.D.N.Y. 2009) (quoting Fed. R. Civ. P. 56(c)). Regarding each of the parties' competing motions, "evidence must be construed in the light most favorable to the non-movant." *Id.* (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 253 (2d Cir. 2002)).

#### 1. TYT's and Gao's Standing

I address first TYT's standing to assert claims to the Property. To contest a civil forfeiture, claimants must demonstrate Article III standing. *United States v. All Right, Title & Interest in Real Prop., Appurtenances, & Improvements known as 479 Tamarind Dr., Hallandale, FL*, No. 98 Civ. 2279, 2005 WL 2649001, at *3 (S.D.N.Y. Oct. 14, 2005). Standing requires that claimants show "some ownership or possessory interest in the property at issue." *Id.* Here, the parties do not dispute that a warrant of eviction was issued against TYT. That warrant terminated TYT's leasehold rights. *See In re Sweet N Sour 7th Ave. Corp.*, 431 B.R. 63, 67 (S.D.N.Y. Bankr. 2010) ("State law is clear that the issuance of a warrant of eviction terminates the landlord-tenant relationship."). And at oral argument, TYT's counsel acknowledged that TYT retains no equitable interest by virtue of any continued possession of the Property. Because TYT no longer holds any interest in the Property, TYT lacks standing to contest the forfeiture and its claims are dismissed.

And because TYT lacks standing, so does David Gao. As a TYT shareholder, any interest Gao might have had in the Property is derivative of TYT's lease. *But see 479 Tamarind Dr.*, 2011 WL 1045095, at *2 ("[A] shareholder has no standing to contest the forfeiture of an asset of a corporation because shareholders do not have an ownership interest in any specific property owned by that corporation."). That interest was extinguished along with TYT's interest when TYT was evicted and vacated the Property. Thus, Gao lacks standing and his claims to the Property are dismissed.

### 2. Probable Cause to Seize the Property

Accordingly, only Won & Har's claim remains. In that regard, the government first moves for summary judgment that probable cause exists to support forfeiture of the Property. To meet this standard, "the Government only must establish 'reasonable grounds, rising above the level of mere suspicion, to believe that certain property is subject to forfeiture.'" *United States v. Two Parcels of Prop. Located at 19 & 25 Castle St.*, 31 F.3d 35, 39 (2d Cir. 1994) (quoting *United States v. 15 Black Ledge Dr.*, 897 F.2d 97, 101 (2d Cir. 1990)). Undisputed declarations from law enforcement officers establish reasonable grounds to believe that at least until May 2012, gambling in violation of 18 U.S.C. § 1955 occurred on the Property. The government also submits video surveillance of the Property that reveals evidence of illegal gambling. I therefore conclude that the government has established probable cause to pursue this forfeiture. *See* § 1955(d) ("Any property . . . used in violation of the provisions of this section may be seized and forfeited to the United States.").

### 3. Innocent Ownership

But this does not end the inquiry. Once probable cause is established, to avoid forfeiture "the burden shifts to the claimant . . . [to] prove by a preponderance of the evidence that either (1) the property was not used for an illegal purpose; or (2) the illegal use of the property was without his knowledge or consent." *Two Parcels*, 31 F.3d at 39. Won & Har submits no evidence contesting that the Property was used for illegal gambling. Instead, Won & Har argues that it is an innocent owner under the second prong. "A claimant may assert an innocent-owner defense . . . if he 'did not know of the conduct giving rise to forfeiture,' or, 'upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.'" *United States v. One Tyrannosaurus Bataar Skeleton*, No. 12 Civ. 4760, 2012 WL 5834899, at *5 (S.D.N.Y. Nov. 14, 2012) (quoting 18 U.S.C. § 983(d)(3)(A)).

Here, Won & Har cannot prove that it took "every action, reasonable under the circumstances" to prevent illegal gambling. *Two Parcels*, 31 F.3d at 40 (quoting *United States v. 418 57th St.*, 922 F.2d 129, 132 (2d Cir. 1990)). By enacting this requirement, "Congress intentionally placed a significant burden upon owners to remain accountable for the legitimate use of their property." *United States v. All Right, Title & Interest in Real Prop. & Appurtenances*, 77 F.3d 648, 657 (2d Cir. 1996) (quoting *United States v. Certain Real Prop. &*

4

*Premises, Known as 418 57th St., Brooklyn, N.Y.*, 922 F.2d 129, 132 (2d Cir. 1990)). Won & Har's conduct does not meet that burden. For example, at no point did Won & Har make any unannounced visits to the Property or even ask TYT whether gambling had ceased. Indeed, Won & Har's offices were located only three blocks from the Property, yet Leong's preannounced monthly rent collections were the only visits he made to the Property. Instead, Won & Har relied upon the surrender of certain tenants' leases and the settlement of the City's action as evidence enough that no further gambling was ongoing. Reliance on these facts fails to demonstrate that Won & Har took all reasonable steps to terminate gambling at the Property.

Thus, whether Won & Har was an innocent owner turns on whether it knew of the ongoing gambling. Knowledge is imputed where a claimant "has engaged in 'willful blindness.'" *United States v. One Parcel of Prop., Located at 755 Forest Rd., Northford, Conn.*, 985 F.2d 70, 72 (2d Cir. 1993) (quoting *United States v. Leasehold Interest in 121 Nostrand Ave. Apt. 1C*, 760 F. Supp. 1015, 1031–32 (E.D.N.Y. 1991)).

Both parties concede that at least by July 2011, Won & Har through its president, David Leong, became aware of illegal gambling occurring at the Property. Leong asserts that he was first informed of this gambling in July 2011 after that activity was reported in Chinese language newspapers. Won & Har then informed TYT that it had to take action. To that end, on August 1, 2011 Won & Har issued to TYT a notice to cure the illegal gambling occurring in four suites on the Property. And in response, TYT sent to Won & Har notice that these suites had surrendered their leases. But Won & Har did not itself inspect the surrendered leaseholds. In short, it took no further independent action to confirm that gambling had ceased. (Leong Dep. 100:6–101:8.)

Still, I must construe the facts in Won & Har's favor. According to Leong, he did not observe any evidence of gambling during any of his monthly visits to the Property. (Leong Aff. ¶ 32.) And by virtue of TYT's settlement with the City, the NYPD was permitted to conduct at least some warrantless searches of the Property. And there is no evidence that the NYPD ever notified Won & Har of an ongoing gambling issue despite this authority to search the premises.

But even crediting Leong's assertion that he did not directly observe wrongdoing during his preannounced visits, this is not sufficient for Won & Har to prevail in this defense. *See 755 Forest Rd.*, 985 F.2d at 72–73 (summary judgment is appropriate where "the claimed state of mind is so inconsistent with the uncontested facts" and the evidence of wrongdoing was within

5

plain view). Indeed, as noted above, TYT never informed Won & Har that all gambling had ceased, nor did Won & Har seek to confirm that fact, either independently or by asking TYT. Further, the government submits abundant evidence that much of the continuing gambling was conducted openly. For example, just nine days after Won & Har's settlement with the City, a confidential informant for the government observed gambling taking place within full view of any passersby in the building's public hallways. (CS Dec. ¶ 5.) And by March 29, 2012, a large sign had been erected on the front of the Property stating "LUCKY U 777" with dollar signs scattered across the sign. This sign, Won & Har's failure to investigate to confirm that gambling had ended, the open gambling ongoing at the Property almost immediately following the settlement, which included a permanent injunction against Won & Har, and Won & Har's apparent disregard for its duty to comply with that injunction is enough to demonstrate willful blindness. Accordingly, summary judgment for the government on this ground is granted.

### 4. Eighth Amendment

Won & Har also urges that forfeiture here would violate the Eighth Amendment. On that ground, Won & Har bears "the burden of establishing that the forfeiture is grossly disproportional by a preponderance of the evidence at a hearing conducted by the court without a jury." 18 U.S.C. § 983(g)(3). But given that discovery is ongoing and the full extent of Won & Har's culpability, the Property's value, and the scope of the gambling at issue is not yet clear, resolution of the forfeiture's proportionality is premature at this stage. *See von Hofe v. United States*, 492 F.3d 175, 186 (2d Cir. 2007) (listing Eighth Amendment factors including "the culpability of each claimant" and "the harshness . . . of the forfeiture in comparison to the gravity of the offense"). Accordingly, I deny summary judgment as to the disproportionality of forfeiture with a hearing to take place on September 26, 2013 at 10 a.m. Discovery will conclude thirty days prior to that date.

### B. Third-Party Fraud Claims Against Ji Xiong Ni and Fen Zheng

I next consider David Gao's complaint against third-party defendants Ji Xiong Ni and Fen Zheng. This complaint is not directly related to the forfeiture proceeding above. Instead, Gao brings securities fraud claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. Ni and Zheng seek dismissal of Gao's claims against them. To the extent the parties seek a resolution of Gao's or Won & Har's

claims against TYT directly, I do not consider their motions as to TYT in light of TYT's pending bankruptcy and the accompanying automatic stay.

### 1. Gao's Fraud Allegations

According to Gao, he first invested $639,000 in TYT "between on or about" October 2008 and September 2009.  (Gao Compl. ¶ 55.)  At some point "[d]uring or about the summer of 2008," Ni "represented to Gao, for the purpose of inducing Gao to invest in TYT, that the landlord of the [Property] was interested in entering into a lease with TYT" such that TYT could open a restaurant and "shopping and business mall" on the premises.  (*Id.* ¶¶ 27, 30, 33.)  But Ni "represented that the rent would only be $30,000 per month" without disclosing that "the landlord wanted a significant rent increase after 5 years."  (*Id.* ¶ 33.)  Gao also claims that Ni "concealed and never revealed" that TYT did not require Gao's investment because the company "had millions of dollars" to fulfill its legitimate business purposes.  (*Id.* ¶¶ 42, 70.)  Instead, on July 18, 2009, Ni informed Gao that TYT had only $140,000 in assets.  (*Id.* ¶ 71.)  Gao also claims that at some point "Ni and Zheng represented to Gao" that an "additional security deposit" had been paid to Won & Har.  (*Id.* ¶¶ 97–98.)  But "in or about July[] 2010," TYT's shareholders received a letter from Won & Har informing them that this deposit had not been paid.  (*Id.* ¶ 99.)

Gao also alleges that Ni solicited Gao's investment only so that Ni could misappropriate those funds.  (*Id.* ¶¶ 36, 44.)  For example, Gao claims that Ni and his associates were "already using and intended to continue to use TYT for their direct and personal benefit" by "misappropriating and converting TYT assets . . . , creating false corporate obligations designed to siphon money from TYT . . . and creating knowingly [sic] false records and documents to conceal their wrongdoing."  (*Id.* ¶¶ 37, 41, 64–65.)  Ni, Zheng, and others began falsifying documents and engaged in other unspecified deceptive behavior "starting prior to November[] 2008."  (*Id.* ¶¶ 64–65.)  And Gao claims that Ni failed to disclose that both Ni and Zheng had caused TYT to engage in "improper activities," including sanctioning illegal gambling. (*Id.* ¶¶ 38–40, 108.)

The balance of the complaint then describes a litany of apparent breaches of fiduciary duty and contract violations that Ni and Zheng perpetrated against TYT and Gao.  (*Id.* ¶¶ 66, 73–96.)  These breaches occurred both before and after Gao claims to have invested.  For example, Gao notes that both before and apparently after he invested, Ni and Zheng caused TYT to issue

"illegal[]" payments to other entities, including rent and utilities expenses for other buildings. (*Id.* ¶¶ 76–77, 82–87.)  According to Gao, "[n]one of these withdrawals were for legitimate business purposes of TYT" or the restaurant TYT had opened.  (*Id.* ¶¶ 87, 88.)

### 2. Primary Securities Fraud Claims

On this Rule 12(b)(6) motion to dismiss, I "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  But private securities fraud actions are also subject to heightened pleading requirements.  These claims must not only satisfy Rule 9(b), but they must also meet the pleading requirements outlined in the Private Securities Litigation Reform Act ("PSLRA").  *Id.* at 99; *see* Fed. R. Civ. P. 9(b) (requiring complainant "state with particularity the circumstances constituting fraud or mistake").  To meet Rule 9(b)'s particularity requirement, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)) (internal quotation marks omitted).  And the PSLRA requires that Plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *ATSI Commc'ns*, 493 F.3d at 99 (quoting 15 U.S.C. § 78u-4(b)(2)).

First, most of Gao's allegations fail to satisfy Rule 9(b)'s timing requirements. Throughout his complaint, Gao alleges that Ni made numerous representations as part of his attempts to convince Gao to invest.  Reading the complaint liberally, these representations occurred "[d]uring or about the summer of 2008."  (Compl. ¶ 27.)  But this timing allegation is insufficient under Rule 9(b).  *See Harborview Value Masterfund, L.P., v. Freeline Sports, Inc.*, No. 11 Civ. 1638, 2012 WL 612358, at *6–*7 (S.D.N.Y. Feb. 23, 2012) (pleadings insufficient where plaintiff alleged misrepresentations "[i]n or about June 2010"); *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 641 (E.D.N.Y. 2003) (pleading alleging misrepresentations made "between May 1997 and August 1997" does not satisfy Rule 9(b)). Similarly, Gao never specifies when Ni or Zheng told Gao that a security deposit had been paid to Won & Har when in fact that deposit had not been paid.  Nor does Gao explain with any specificity when Ni or Zheng falsified documents, much less what falsifications were made.

8

Accordingly, these allegations are not stated with sufficient particularity to support a securities fraud claim.

The only allegation that offers a more specific time is Gao's claim that on July 18, 2009, Ni represented that TYT had only $140,000 in assets when TYT in fact had "millions."  But coupled with Gao's nebulous allegation that he invested in TYT "between on or about" October 2008 and September 2009, it is unclear from the complaint whether this purported misrepresentation occurred before Gao invested in TYT.  Misrepresentations made "after the Plaintiff already had purchased his shares" are not actionable under the Exchange Act.  *Solow v. Citigroup, Inc.*, 827 F. Supp. 2d 280, 287 n.2 (S.D.N.Y. 2011).  Under those circumstances, any fraud does not occur "in connection with the sale or purchase of securities."  *Id.*; *see Wilson v. Dalene*, 699 F. Supp. 2d 534, 543 (E.D.N.Y. 2010) ("[A] plaintiff must allege that he was an actual purchaser or seller of securities.  Among the potential plaintiffs barred by this rule are persons injured by 'decisions to hold or refrain from trading.'" (quoting *Gordon Partners v. Blumenthal*, No. 02 Civ. 7377, 2007 WL 431864, at *9 (S.D.N.Y. Feb. 9, 2007)).  For this reason, all of Gao's allegations as to fraud related to Ni's misdeeds after Gao had completed his investment in TYT must fail.

Gao also alleges that Ni failed to disclose diversions of TYT's assets to Ni and Zheng or to other entities.  But Gao's assertions that these activities were "illegal" and were not for "legitimate business purposes" are conclusory.  Such allegations are not sufficiently particularized to support a fraud claim.  *See In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006) ("If the complaint fails to allege facts which would establish such an illegal scheme, then the securities law claims premised on the *nondisclosure* of the alleged scheme are fatally flawed."); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 624 (S.D.N.Y. 2005) (requiring particularity where allegation is that defendants failed to disclose illegal behavior); *Hayden v. Feldman*, 753 F. Supp. 116, 119 n.8 (S.D.N.Y. 1990) ("Mere claims that entities were 'fronts' or 'shells' or that a transaction 'had no legitimate business purpose or value,' without more, does not satisfy plaintiffs' burden" under Rule 9(b)).

Further, the relationship between Gao's allegations of wrongdoing and his investment is unclear.  Whether Gao invested in installments or in a lump sum is not apparent from the face of the complaint.  And given the 11-month window in which Gao claims to have invested, he leaves the Court to guess what conduct or nondisclosures on the part of Ni or Zheng actually affected

9

his decision to invest. Without more factual detail, his claims constitute little more than "corporate abuse and diversion . . . cognizable under state law but not under the [Exchange] Act." *Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 241 (S.D.N.Y. 2006) (quoting *Mutual Shares Corp. v. Genesco, Inc.*, 384 F.2d 540, 546 (2d Cir. 1967)) (considering claims that majority shareholders "ran the company in their own interests rather than the company's, by diverting company assets to themselves"). Whether Gao raises a valid claim under state law is not a question before this Court. Indeed, Gao also presses state law claims in a currently pending case in New York Supreme Court on substantially similar allegations. (Hayes Decl. Ex. B.) I do not consider the merits of that action here. Suffice it to say Gao's claims that Ni and Zheng diverted his investment to improper ends do not support a securities fraud claim under Rule 9(b).

### 3. Control Person Liability

Because Gao fails to plead a primary securities fraud violation, he also fails to plead control person liability. Under § 20(a), a prima facie case of control person liability requires that Gao show "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns*, 493 F.3d at 108. Because Gao fails the first prong, he cannot establish control person liability. Accordingly, Gao's claims against Ni and Zheng are dismissed.

## C. TYT's Counsel's Motion to Withdraw

At TYT's direction, counsel for TYT has also moved to withdraw. Under Local Civil Rule 1.4, I may grant counsel's motion given "satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar, and whether or not the attorney is asserting a retaining or charging lien." *In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789, 2012 WL 2122166, at *1 (S.D.N.Y. June 12, 2012). No other party has demonstrated any prejudice by TYT's desire to stop litigating here on its own behalf. And as TYT's claim to the Property is dismissed and counsel has been instructed to stop working on this case, I conclude that satisfactory reasons for withdrawal exist. Thus, despite TYT's pending bankruptcy, I grant counsel's motion. *See Tormented Souls Inc. v. Tormented Souls Motorcycle Club Inc.*, No. 09 Civ. 1743, 2012 WL 1314128, at *1 (E.D.N.Y. Apr. 17, 2012) (granting motion to withdraw despite defendant's bankruptcy filing).

## CONCLUSION

I have considered the parties' remaining arguments and find them meritless. For the reasons stated above, the government's motion for summary judgment is GRANTED. Won & Har's motion for summary judgment is DENIED. The motion to dismiss the securities fraud claims against Ji Xiong Ni and Fen Zheng for failure to state a claim is GRANTED. TYT's counsel's motion to withdraw is also GRANTED. If need be, a proportionality hearing in conformance with this decision will take place on September 26, 2013 and discovery will close thirty days prior to that hearing on August 27, 2013. The Clerk of Court is instructed to close these motions (Docket #29, #31, #43, #76, #94) and remove them from my docket.

**SO ORDERED.**

Date: 8/6/13
New York, New York

HAROLD BAER, JR.
United States District Judge

11